# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JANA DENISE HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-105-CG** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Jana Denise Hall brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 13, hereinafter "R. __"), and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on October 5, 2011, alleging a disability onset date of July 30, 2006. R. 124-29, 155-57, 158-66. Following denial of the application initially and on reconsideration, a hearing was conducted before an Administrative Law Judge ("ALJ"). R. 45-71, 74-78. The ALJ issued an unfavorable decision on July 30, 2013. R. 18-39. The SSA Appeals Council denied Plaintiff's

request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-6; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 30, 2006, the alleged onset date, through December 31, 2011, her date last insured. R. 20; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease; major depressive disorder versus bipolar disorder; attention deficit hyperactivity disorder; and rule out personality disorder." R. 20-31; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 31-32; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 32-37; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform light work, subject to specific limitations and restrictions:

> the claimant is able to only occasionally push/pull, including operation of hand/foot controls, as well as occasionally stoop and climb ramps and stairs, and frequently kneel, crouch, crawl, and . . . balance but never climb ladders, ropes or scaffolds. Additionally, the claimant is able to understand, remember, comprehend and carry out simple and some more

2

complex instructions and tasks, in addition to being able to work [with] supervisors and coworkers on a superficial work basis and adapt to routine changes in the work environment, but the claimant is unable to work with the general public.

R. 32-37; *see* 20 C.F.R. § 404.1567(b) (defining "light work"). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work and that transferability of job skills was not material to the determination of disability. R. 37, 38; *see* 20 C.F.R. §§ 404.1565, .1568.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light, semiskilled occupations such as merchandise marker, label coder, and routing clerk; as well as sedentary, unskilled occupations such as addresser, tube operator, and document processor, all of which offer jobs that exist in significant numbers in the national economy. R. 38-39; *see* 20 C.F.R. § 404.1545(a)(5)(ii). On that basis, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 30, 2006, through December 31, 2011. R. 39; *see* 20 C.F.R. § 404.1520(g).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole

and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff alleges the following claims of error: (1) the RFC is not supported by substantial evidence because (a) ALJ did not properly evaluate the opinion of treating psychologist Michael Brand, PhD, (b) the ALJ did not properly develop the record, and (c) the ALJ did not properly evaluate Plaintiff's credibility; and (2) the ALJ's step-five determination is not supported by substantial evidence. Pl.'s Br. (Doc. No. 21) at 5, 15-32.[1]

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## A. The RFC Determination

### 1. Mental Limitations Found by Dr. Brand

After an initial psychiatric evaluation on November 11, 2010, Elizabeth Foote, MD, referred Plaintiff for individual psychotherapy to Michael Brand, PhD, who was Dr. Foote's colleague in the Department of Psychiatry and Behavioral Sciences at the University of Oklahoma Health Sciences Center. R. 353, 356. The medical record indicates that Dr. Foote continued to see Plaintiff for medication management through January 3, 2013. *See* R. 353-418, 463-98 (Exs. 7F, 15F). Though there are some gaps, the medical record indicates that Plaintiff saw Dr. Brand for psychotherapy from November 30, 2010, through the end of 2011. *See* R. 353-418. There are no treatment records for Dr. Brand during 2012, though Dr. Brand completed two Mental Capacity Assessment forms that year. *See* R. 419-22, 499-502 (Exs. 8F, 16F). There is also one treatment record for Dr. Brand from 2013. R. 464-65.

On January 12, 2012, Dr. Brand completed a Mental Capacity Assessment form ("MCA 1"), in which he checked boxes opining that Plaintiff had marked limitations in six functional areas. R. 420-22. On December 18, 2012, Dr. Brand completed a second Mental Capacity Assessment form ("MCA 2"), in which he checked boxes opining that Plaintiff had marked limitations in nine functional areas. R. 499-501.[2] Plaintiff alleges

---

[2] Out of the 23 questions on each MCA, nine of Dr. Brand's answers were identical. Of those nine, three noted marked limitations in certain of Plaintiff's abilities (ability to complete a normal workday without interruptions from psychologically based symptoms, ability to respond appropriately to changes in the work setting, and ability to travel in unfamiliar places or use public transportation); four indicated moderate limitations in certain abilities; and two indicated slight limitations in certain abilities. On the 14

that the ALJ failed to properly analyze and weigh these opinions by Dr. Brand, arguing that "[t]he ALJ erred when he failed to give controlling or even great weight to the opinion of treating psychologist Dr. Brand." Pl.'s Br. at 16; *see also id.* at 16-21.

### a. *Treating physician opinions*

By regulation, a treating physician's (or treating psychologist's) medical opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. § 404.1527(a)(2), c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. § 404.1527(a)(2), (c)(2). The opinion of a treating physician must be given controlling weight if it is both well supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(c)(2). Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. A treating physician opinion not afforded controlling weight is still

---

questions that received different answers between the MCAs, Dr. Brand indicated a decrease in Plaintiff's limitations between the earlier and later assessments on five answers, and he indicated an increase in limitations during that eleven-month period on nine answers. A table showing all the assessed limitations and Dr. Brand's responses to each MCA is appended to the end of this order.

entitled to deference.  *See Watkins*, 350 F.3d at 1300.  The determination of how much

deference to afford a treating physician opinion should be made in view of a prescribed

set of regulatory factors.  *Watkins*, 350 F.3d at 1301; 20 C.F.R. § 404.1527(c)(2)-(6).  But

"[t]he ALJ is not required to mechanically apply all of these factors in a given case."

*Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (citing *Oldham v. Astrue*, 509

F.3d 1254, 1258 (10th Cir. 2007)).  "It is sufficient if he 'provides good reasons in his

decision for the weight he gave to the physician's opinions.'"  *Id.* (alterations omitted)

(quoting *Oldham*, 509 F.3d at 1258).

### b.  The ALJ's findings

The ALJ gave "no significant weight" to the opinions Dr. Brand expressed in the

MCAs, determining that they were "not 'well supported'" and that they were

"inconsistent with other substantial evidence of record."  R. 30 (quoting SSR 96-2p, 1996

WL 374188 (July 2, 1996)), 37.  Specifically, the ALJ stated:

> Clearly, it appears that Dr. Brand is a treating physician and that he is an
> acceptable medical source.  However, it appears that the opinions regarding
> the claimant's mental [RFC], as expressed in the [MCAs] described above,
> are not "well supported."  Furthermore, his opinions regarding the
> claimant's mental [RFC] are inconsistent with other substantial evidence of
> record.  [First], the undersigned notes that Dr. Brand's opinions regarding
> the claimant's mental [RFC] are not well supported by the mental status
> examination findings reported by Dr. Brand in the progress notes
> maintained in the regular course of treating the claimant, as described
> above.  Moreover, as reflected above, such opinions certainly are
> inconsistent with the mental status findings reported by Dr. Foote, who
> apparently is a colleague of Dr. Brand in the treatment of the claimant at
> OU Physicians Psychiatry and Behavioral Sciences.  Notably, it generally
> appears that the mental status examination findings reported by Dr. Foote
> often are significantly inconsistent with those reported by Dr. Brand during
> contiguous time periods.  In the latter respect, the undersigned is generally
> disposed to assign great[er] weight to the opinions of Dr. Foote, who is a

psychiatrist, than to those of Dr. Brand, who is simply a psychologist/counselor. In any event, the undersigned again notes that even the mental status examination findings reported by Dr. Brand do not reflect . . . the severity suggested by Dr. Brand in his medical source statements, particularly with respect to a continuous of not less than 12 consecutive months, as required by the Social Security Act. Additionally, the opinions of Dr. Brand regarding the claimant's mental [RFC] not only are inconsistent with the opinions of the medical consultants for the state agency, but also are inconsistent with the opinions and mental status findings reported by Dr. Waller, as described above. For all of the foregoing reasons, the undersigned is disposed to assign no significant weight to the opinions of Dr. Brand regarding the claimant's mental [RFC]. Nevertheless, the undersigned does assign full weight to any and all mental status findings reported by Dr. Brand in the regular course of his treatment of the claimant, albeit such findings are interpreted in their [context] with the mental status findings reported by Dr. Foote, as well as the mental status findings reported by other mental health specialists, as well as objective observations by other acceptable treating and/or examining medical sources appearing of record.

R. 30.

### c. Discussion

Plaintiff argues that the ALJ "did not properly analyze the relevant factors" in his consideration of Dr. Brand's MCAs. Plaintiff specifically challenges the ALJ's determination that Dr. Brand's opinions were not well supported and were inconsistent with other substantial evidence of record. Pl.'s Br. at 16-21. In considering Plaintiff's arguments, the Court first considers whether the ALJ properly determined that Dr. Brand's MCAs were not entitled to controlling weight—i.e., was there substantial evidence to support the ALJ's findings that Dr. Brand's MCAs were "not 'well supported'" and that they were "inconsistent with other substantial evidence of record." *See* R. 30; *Watkins*, 350 F.3d at 1300. If the ALJ properly determined that Dr. Brand's MCAs were not entitled to controlling weight, then the Court next considers whether the

ALJ properly determined that Dr. Brand's MCAs were entitled to "no significant weight"—i.e., did the ALJ consider the proper regulatory factors and was his analysis of those factors supported by substantial evidence.

    i.  <u>The ALJ properly determined that Dr. Brand's MCAs were not entitled to controlling weight</u>

*a) Dr. Brand's MCAs were not well supported*

The MCA form instructs the assessor to "[d]escribe the medical/clinical findings that support this assessment." *See* R. 420-22, 499-501. For his MCA 1 assessments, Dr. Brand provided explanations for most of his answers, but these explanations do not clearly correspond with the "marked" limitations he noted. *See* R. 420-22.[3] For his MCA 2 assessments, however, Dr. Brand provided no explanations at all. *See* R. 499-501. Thus, insofar as what is provided in the MCAs themselves, the ALJ reasonably concluded that the limitations assessed by Dr. Brand are not well supported.

With respect to Dr. Brand's other records, the ALJ discussed Dr. Brand's treatment notes in detail and specifically found them to be "inconsistent" with the limitations assessed in the MCAs. *See* R. 30 ("Dr. Brand's opinions regarding the claimant's mental [RFC] are not well supported by the mental status examination

---

[3] Regarding limitations related to Understanding & Memory, Dr. Brand did not provide explanations for his assessment of Plaintiff's limitations. *See* R. 420. Regarding limitations related to Sustained Concentration & Persistence, Dr. Brand stated "Patient has problems w/ scheduling, time[] management, and memory. Frequently late to appointments, cancel[]s, and no shows." R. 421. Regarding limitations related to Social Interaction, Dr. Brand stated "Has *modest difficulty* in these areas currently in non work environment. Becomes very anxious, blocking judgement and ability to respond." *Id.* (emphasis added). And regarding limitations related to Adaptation, Dr. Brand stated "Currently *moderate functioning* in these areas, *some* trouble coping with change." R. 422 (emphasis added).

findings reported by Dr. Brand in the progress notes maintained in the regular course of treating the claimant"). Plaintiff argues that, to the contrary, Dr. Brand's MCA opinions were "well supported by his treatment notes," Pl.'s Br. at 18, relying specifically on statements from five treatment notes: those of July 5, 2011 (R. 396), July 14, 2011 (R. 397), September 6, 2011 (R. 405), September 29, 2011 (R. 406), and October 11, 2011 (R. 407). *See* Pl.'s Br. at 18.

The ALJ noted the statements Plaintiff emphasizes and also discussed other findings by Dr. Brand that do not reflect severe functional limitations:

> [M]ental status examination apparently reported by Dr. Brand on July 5, 2011, reflected the following findings: "dysthymic; tearful at times, affect over modulated/mood incongruence, sleep initial disturbance, appetite diminished, lost 15-20 pounds in past year, obsessive thinking, denies si/hi [i.e., suicidal ideation/homicidal ideation], some thought of substance use, smoking off and on, insight poor, *judgment fair, impulse [fair]*, risk low." *However*, mental status examination reported by Dr. Brand on July 14, 2011, reportedly reflected the following findings: "*mood normal* but anxious - marriage, affect congruent difficulty with modulation - anxiety and marriage; *sleep wnl* [*i.e., within normal limits*], appetite down; weight loss 106/5'5" few thoughts of use, denies si/none noted." Subsequently, mental status examination reported by Dr. Brand on September 6, 2011, reportedly reflected the following findings: "*verbal and engaged; no acute distress*; no si/hi n/v; *ADL* [i.e., *activities of daily living*] wnl; mood euthymic stable; affect incongruent, over modulated, anxious, sad, guilty; *thinking logical* [*goal-directed*] with some tangential and circumstantial thinking, rpt confusion, blocking, worry, obsessive, racing, distracted thinking most of time; guilt and self-reproach; risk low." Mental status examination reported by Dr. Brand on September 29, 2011, reportedly reflected the following findings: "mood anxious worried; affect over modulated; thoughts clouded, confused, denies si/hi none n/v; *ADL wnl*; risk low." Mental status examination reported by Dr. Brand on October 11 2011, reportedly reflected the following findings: "Rpt more depressed last week or so; mood depressed, *flux some pleasant moods*; affect tearful today, rpt some problems with modulation- emotional; thinking rambles, tangential, circumstantial, decreased attention and concentration requires redirecting, denies si/hi none n/v; sleep disturbed did not sleep last night;

> *ADL wnl with effort*; denies thoughts to use alcohol or drugs; risk low -
> children."

R. 24-25 (emphasis added).

The ALJ also discussed additional findings by Dr. Brand that likewise reflect that

Plaintiff was experiencing mental health issues but nonetheless was functioning within

normal limits and improving:

> [M]ental status examination reported by Dr. Brand on October 24, 2011,
> reportedly reflected the following findings: "*Mood, 'ok, normal'* affect over
> modulated with considerable effort; thinking unclear, scatter, blocking, "not
> clicking" denies si/hi n/v; sleep disturbed by baby, appetite flux; *ADL wnl*;
> risk low." Mental status examination reported by Dr. Brand on November
> 14, 2011, reportedly reflected the following findings: "Rpt feeling better
> *Behavioral -* [*normal*] *Mood - better*, periods of dysthymia and irritability
> several days Affect -flux during these periods *Thinking – logical* [*goal-
> directed*], SI/HI-denies n/v *ADL-* [*normal*], sleep, decreased, little exercise
> Risk - low - moderate."
> . . . .
>
> [M]ental status examination reported by Dr. Brand on December 15, 2011,
> reportedly reflected the following findings: "*Modest improvement
> Behavioral –* [*normal*] Mood - flux with pain, depression some anxiety
> *Affect - less nervous, better modulation Thinking – logical*[*goal-directed*],
> all-nothing SI/denies n/v *ADL-* [*normal*] Risk-low - moderate."

R. 25 (emphasis added); *see also* R. 410, 411, 414.[4]

As reflected in the ALJ's detailed summaries, the statements from Dr. Brand that

Plaintiff relies on appear in the context of that physician's numerous statements reflecting

a more positive view of Plaintiff's functioning. Plaintiff has not shown that the ALJ

improperly ignored negative findings in favor of positive ones or otherwise failed to

---

[4] There are no treatment notes from Dr. Brand from 2012. The medical record contains
one other treatment note from Dr. Brand, dated January 3, 2013, which states, "Thinking-
logical and goal directed[;] SI/HI-none n/v[;] ADL-[normal] [;] Risk-low." R. 465.

grapple with significant opinions of Dr. Brand. And, upon review of Dr. Brand's treatment notes, the Court concludes that the ALJ's determination that Dr. Brand's MCA assessments "are not well supported by the mental status examination findings reported by Dr. Brand in the [treatment] notes" is reasonable and supported by substantial evidence. *See* R. 30, 356-418, 464-65. To find otherwise would require the Court to reweigh the evidence and substitute its judgment for that of the ALJ, which it may not do. *See Bowman*, 511 F.3d at 1272; *accord Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

### b) Dr. Brand's MCAs were inconsistent with other substantial evidence of record

#### (1) Consistency with Dr. Foote's Findings and Opinions

In declining to give significant weight to the opinions in Dr. Brand's MCAs, the ALJ also determined that "such opinions certainly are inconsistent with the metal status findings reported by Dr. Foote, who apparently is a colleague of Dr. Brand in the treatment of the claimant." R. 30. Plaintiff challenges this determination, emphasizing certain statements from Dr. Foote's notes from Plaintiff's initial psychiatric review and another six sessions. Pl.'s Br. at 18-19 (citing R. 353-54 (initial psychiatric evaluation dated Nov. 11, 2010), 367 (progress note dated Feb. 21, 2011), 369 (progress note dated Mar. 14, 2011), 375 (progress note dated Mar. 31, 2011), 377 (progress note dated Apr. 21, 2011), 382 (progress note dated May 17, 2011), 392 (progress note dated June 27, 2011)).

As to the initial psychiatric evaluation, it is correct that Dr. Foote noted Plaintiff's statements that she suffered "chronically decreased appetite, decreased concentration, guilt, spontaneous tearfulness, and 'the ability to feel presences' and 'see shadows of dead people,'" and her childhood sexual abuse. R. 353-54. Those notes are not the psychiatrist's own findings, however, but a record of Plaintiff's self-reporting of her history. As such, they are of limited value in evaluating the consistency of Dr. Foote's mental status findings with Dr. Brand's MCA opinions.

As to the subsequent session notes, Plaintiff points to Dr. Foote's observation that "Plaintiff was anxious and depressed with poor insight and judgment." Pl.'s Br. at 19 (citing R. 367 (Feb. 21, 2011), 369 (Mar. 14, 2011), 375 (Mar. 31, 2011), 377 (Apr. 21, 2011), 382 (May 17, 2011), 392 (June 27, 2011)). Plaintiff also points to Dr. Foote's assessments of GAF scores of 40 and 45.[5] Pl.'s Br. at 19; R. 367, 369, 375, 377, 382, 392.

Again, the ALJ considered each of the treatment notes cited by Plaintiff, correctly recounting that each reflected the following mental examination findings:

> "Alert & Oriented x4. Moderately groomed. Pleasant and cooperative with interview. Psychomotor agitation noted. Voice appropriate volume. Speech regular rate, mildly labile prosody. Mood anxious, depressed. Affect mildly labile, congruent. No SI, no HI. Thought process logical & coherent to directed questioning. Thought content without delusions. No

---

[5] A GAF score is a clinician's determination on a scale of 1 to 100 of an individual's overall level of functioning. *See Langley*, 373 F.3d at 1122 n.3 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM IV") 32 (Text Revision 4th ed. 2000)). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Id.* (quoting DSM IV at 34).

> auditory or visual hallucinations. Recent & remote memory intact. Insight
> and judgment poor."

R. 24. The ALJ also considered other treatment records from Dr. Foote dated October

17, 2011; November 15, 2011; December 20, 2011; February 2, 2012; March 15, 2012;

April 19, 2012; May 17, 2012; June 14, 2012; July 12, 2012; August 9, 2012; September

4, 2012; October 2, 2012; November 1, 2012; November 29, 2012; and January 3, 2013.

*See* R. 25-27; *see also* R. 408-09, 412-13, 415-16, 466-96. These additional records

reflect examination findings similar to those summarized (as set forth above) by the ALJ,

with the exception that they also indicate some improvement in insight and judgment,

psychomotor agitation, and/or speech.

    While Dr. Foote's treatment notes contain findings of mental impairments and

limitations, they generally are not consistent with the proposition that Plaintiff's

functional limitations regarding work-related activities are of the marked severity found

by Dr. Brand in his MCAs. One possible exception, however, is Dr. Foote's assessments

of GAF scores of 40 and 45, which align to some extent with Dr. Brand's MCAs. At her

initial psychiatric evaluation on November 11, 2010, Dr. Foote assessed Plaintiff with a

GAF score of 40. R. 354. Dr. Foote's treatment notes from the next six appointments

show that she assessed Plaintiff with a GAF score of 45. R. 367 (Feb. 21, 2011), 369

(Mar. 14, 2011), 375 (Mar. 31, 2011), 377 (Apr. 21, 2011), 382 (May 17, 2011), 392

(June 27, 2011). As with the mental examination findings, however, GAF scores

reflected in treatment records dated after June 27, 2011, indicate improvement. Though

the treatment record dated December 20, 2011, reflects a GAF score of 45, Dr. Foote's

treatment records dated October 17, 2011; November 15, 2011; February 2, 2012; March 15, 2012; April 19, 2012; May 17, 2012; June 14, 2012; and July 12, 2012, all reflect GAF scores of 50. R. 409, 413, 416, 486, 489, 491, 493, 495, 497. Dr. Foote's treatment records dated August 9, 2012; September 4, 2012; October 2, 2012; November 1, 2012; November 29, 2012; and January 3, 2013, all reflect GAF scores of 55. R. 466, 469, 473, 477, 480, 483.

As an initial matter, the fact that the ALJ did not discuss the GAF scores was not erroneous in and of itself. GAF scores have been found to be "not essential to the RFC's accuracy," such that a failure to specifically address them is not error when the ALJ adequately considers the assessing physician's examination findings and other physicians' opinions that included the scores. *See Richards v. Colvin*, 640 F. App'x 786, 791 (10th Cir. 2016) (internal quotation marks omitted) (holding that failure to discuss GAF scores did not demonstrate error in ALJ's decision because such scores were not "significantly probative evidence" when accompanied by no explanation and no indication as to how they affected the claimant's functional abilities); *accord Kearns v. Colvin*, 633 F. App'x 678, 682 (10th Cir. 2015). Indeed, "[t]he most recent edition of the *DSM* omits the GAF scale 'for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.'" *Richards*, 640 F. App'x at 791 (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).

Here, even accepting Dr. Foote's GAF scores of 40 and 45 as consistent with Dr. Brand's MCAs, those scores provide only limited support for the marked limitations Dr. Brand assessed. Dr. Brand completed MCA 1 on January 12, 2012, which is after Dr. Foote's treatment notes began to reflect improvement and the GAF scores increased to 50.[6] Dr. Brand completed MCA 2 on December 18, 2012, which was after Dr. Foote consistently assessed Plaintiff's GAF scores at 55.[7] Upon review of Dr. Foote's treatment notes, including the GAF scores assessed therein, the Court concludes that the ALJ's determination that Dr. Brand's MCA assessments "are inconsistent with the mental status findings reported by Dr. Foote" is reasonable and supported by substantial evidence. *See* R. 30.

(2) <u>Consistency with Dr. Waller's Findings and Opinions</u>

Robert Waller, PhD, conducted a psychological evaluation of Plaintiff on December 1, 2011. *See* R. 347-50. In declining to give significant weight to the opinions in Dr. Brand's MCAs, the ALJ determined that those opinions "are inconsistent with the opinions and mental status findings reported by Dr. Waller." R. 30. Emphasizing certain portions of Dr. Waller's exam notes, Plaintiff argues that Dr. Brand's opinions actually were supported by Dr. Waller's findings. Pl.'s Br. at 19-20.

---

[6] One exception is the December 20, 2011, GAF score of 45.

[7] "A GAF score of 51-60 indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.'" *Langley*, 373 F.3d at 1122 n.3 (quoting DSM IV at 34).

The ALJ reviewed Dr. Waller's mental status examination findings in detail. R. 26-27. Dr. Waller found that Plaintiff suffered from bipolar disorder and depression, conclusions agreed with by the ALJ. R. 31. Insofar as limitations, Plaintiff points to Dr. Waller's observation of "memory gaps, loss of focus and loss of concentration." Pl.'s Br. at 19; R. 349. But in addition to those findings, Dr. Waller also observed that Plaintiff has "cognitive/intellectual functioning . . . within the normal range," "[n]o deficits . . . in language/communication skills," "no deficits in calculation skills/numerical reasoning," "normal level vocabulary and syntax/grammatical structuring," and "[c]omprehension [that is] appropriate for routine, verbally presented material." R. 349.[8] Further, the ALJ summarized the following findings by Dr. Waller:

> On mental status examination, the claimant reportedly experienced some difficulty attending to and participating in examination procedures. Furthermore, she was a poor historian. However, there reportedly were no signs of diminished reality contact, and her orientation to person, place, time, and situation was intact. The claimant's mentation was slowed/halting, and her thought processes were marred by memory gaps and loss of focus/concentration, although thought content was appropriate to presented topics of discussion. The claimant's affect was flat, and her mood seemed depressed. However, she reportedly maintained good emotional control at all times. She reported problems with mood swings, although she denied current suicidal ideation. However, Dr. Waller noted that no impulsivity or uncontrolled/unmanageable behaviors were evidenced.

R. 26.

---

[8] As with Dr. Foote's notes, Plaintiff emphasizes various symptoms noted by Dr. Waller as having been reported by Plaintiff. Pl.'s Br. at 19; R. 348. Again, those notes are neither findings nor opinions and, as such, are of limited value in evaluating the ALJ's determination that Dr. Brand's MCAs are inconsistent with Dr. Waller's opinions and mental status findings. *See* R. 30.

The ALJ's discussion of Dr. Waller's findings demonstrates that he considered both those portions of Dr. Waller's report that indicated mental limitations as well as those portions that did not. And, while Dr. Waller's findings support some level of mental impairments in some categories listed in the MCAs, the findings do not support marked limitations in all of the categories found by Dr. Brand. Upon review of Dr. Waller's report, the Court concludes that the ALJ's determination that Dr. Brand's MCA assessments "are inconsistent with the opinions and mental status findings reported by Dr. Waller" is reasonable and supported by substantial evidence. To find otherwise would require the court reweigh the evidence and substitute its judgment for that of the ALJ, which it is precluded from doing. *See Bowman*, 511 F.3d at 1272; *accord Hackett*, 395 F.3d at 1172; *see also Lax v. Astrue*, 498 F.3d 1080, 1084 (10th Cir. 2007) (explaining that a court "may not displace the agency's choice between two fairly conflicting views").

  ii. <u>The ALJ properly determined that Dr. Brand's MCAs were entitled to no significant weight</u>

Having found that the ALJ properly determined that Dr. Brand's MCAs were not entitled to controlling weight, the question becomes whether the ALJ properly determined that the MCAs were entitled to "no significant weight." *See* R. 30; *Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. The ALJ must consider a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by

relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301. The ALJ need not, however, explicitly discuss all these factors in a given case, so long as the ALJ "provide[s] good reasons in [the] decision for the weight he [or she] gave to the treating source's opinions." *Oldham*, 509 F.3d at 1258.

The ALJ considered these factors in weighing Dr. Brand's MCAs and—consistent with the third and fourth enumerated factors—assigned the MCA assessments little weight due to an inadequacy of support from Dr. Brand's own findings and an inconsistency with other substantial medical evidence. *See* 20 C.F.R. § 404.1527(c)(3), (4). The ALJ also properly considered that Dr. Brand was a psychologist and not a psychiatrist. R. 30; 20 C.F.R. § 404.1527(c)(5). Plaintiff criticizes the ALJ's statement in this regard as dismissive of Dr. Brand's training but the ALJ expressly stated that Dr. Brand was a treating physician and an acceptable medical source. Pl.'s Br. at 17-18, 20; R. 30. There is no indication that the ALJ placed undue weight on this distinction and, moreover, the difference in specialization between Dr. Foote and Dr. Brand was only one of multiple reasons given by the ALJ for not fully crediting Dr. Brand's opinions. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) ("But even if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting [the treating specialist's] opinion.").

### d. Conclusion

The ALJ's analysis of Dr. Brand's opinions specified that he was giving those opinions "no significant weight" and included consideration of the proper regulatory factors as well as "citation to contrary, well-supported medical evidence." *See Oldham*, 509 F.3d at 1258; R. 30. As such, the analysis satisfies the legal standards of the treating physician rule, including "that the ALJ's decision be sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (internal quotation marks omitted). Further, as detailed above, the ALJ's findings underlying his decision to give "no significant weight" to the opinions in Dr. Brand's MCAs—namely that such opinions were not well supported and were inconsistent with other medical evidence—were reasonable and supported by substantial evidence.[9] Accordingly, the ALJ did not err in analyzing or assigning weight to Dr. Brand's opinions.

### 2. Credibility

Plaintiff alleges that the ALJ failed to "make proper credibility findings." Pl.'s Br. at 25. The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of . . . symptoms," such as pain and other subjective

---

[9] The ALJ also concluded that the limitations found by Dr. Brand were inconsistent with those of two reviewing psychologists, both of whom had determined that Plaintiff does not have a severe mental impairment. R. 30, 423-35, 453. Plaintiff does not challenge the ALJ's finding of inconsistency in this respect. Ultimately, the ALJ did not assign significant weight to the opinions of the reviewing psychologists, at least insofar as their determination of no severe mental impairments. R. 30-31.

complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). The ALJ is required to closely and affirmatively link his or her credibility findings to substantial evidence in the record and to include "specific reasons" for such findings. *See Wilson*, 602 F.3d at 1144; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); SSR 96-7p, 1996 WL 473186, at *4. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). In making credibility determinations, the ALJ should consider objective evidence as well as certain factors, including:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *accord* 20 C.F.R. § 404.1529(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

Plaintiff's challenge centers on the inconsistencies the ALJ found among: Plaintiff's testimony on April 4, 2013; the Third-Party Function Report completed by Plaintiff's husband on April 6, 2012; and Plaintiff's Function Report of November 4, 2011. *See* Pl.'s Br. at 26-27; *see also* R. 45-67; R. 175-82, 193-200 (Exs. 5E, 9E). Plaintiff does not argue that there were no inconsistencies, but rather that the ALJ "failed to consider that Plaintiff's disability reports were all written during different time periods throughout the administrative process that spans more than 5 years from the alleged onset date through date of decision. Given the time span[,] it is clear that symptoms themselves waxed and waned." Pl.'s Br. at 26.

This argument is unavailing for several reasons. First, the ALJ considered inconsistencies that would not have "waxed and waned" over time. For instance, the ALJ found "internal inconsistencies in the claimant's responses on her Function Report[]," which reflected answers given at a set point in time rather than over a long time span. R. 36; *see* R. 175-82. The ALJ also noted:

> With respect to how well the claimant got along with authority figures, the claimant's husband responded, "It was bad for a while but with medication change it is much better." However, at the hearing the claimant appeared to indicate that her medications had not really been changed. Additionally, inconsistent with the claimant's response, the claimant's husband indicated that the claimant had not been fired or laid off from a job because of problems getting along with other people.

R. 35. *Compare* R. 199, *with* R. 51, 59, 181.

Second, the ALJ also noted inconsistencies with Plaintiff's report to Dr. Waller on December 1, 2011, which was nearly contemporaneous with Plaintiff's Function Report, stating that Dr. Waller's report "appears to suggest greater independen[ce] in activities of

daily living [than] suggested by the claimant at the hearing on April 4, 2013[,] or even in her Function-Report[] dated November 4, 2011." R. 33-34. *Compare* Ex. 5E, *with* R. 346-51 (Ex. 5F), *and* R. 55-57, 59-62.

Third, even if *some* of the multiple examples of inconsistencies in Plaintiff's statements cited by the ALJ could be properly explained, it was appropriate for the ALJ to consider the other inconsistencies that Plaintiff does not challenge. *See* R. 33-37; 20 C.F.R. § 404.1529(c)(4) (providing that "[i]n determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities" the SSA "will consider whether there are *any* inconsistencies in the evidence and the extent to which there are *any* conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you" (emphasis added)); *Wilson*, 602 F.3d at 1146 (finding the ALJ reasonably relied on inconsistencies between claimant's statements).

Accordingly, there is substantial evidence to support the ALJ's conclusion that Plaintiff's inconsistent statements regarding her own abilities undermined her credibility. Moreover, the ALJ's credibility determination did not rely solely on inconsistencies in Plaintiff's statements. The ALJ also cited Plaintiff's history of fraudulent crimes, stating that "[w]hile the undersigned is not convinced that merely being convicted of a crime detracts from credibility, crimes of fraud do reflect upon an individual's propensity to tell the truth, particularly when the fraud involves obtaining pain medication." R. 33; *see also* R. 291, 347, 354. The ALJ reasonably concluded that these crimes of fraud

undermined Plaintiff's credibility as a whole.  *See* 20 C.F.R. § 404.1529(c)(3)(vii) (an ALJ may consider "other factors"); *Poppa v. Astrue,* 569 F.3d 1167, 1171-72 (10th Cir. 2009) (finding the ALJ properly discussed and relied on evidence of drug-seeking behavior when assessing the claimant's credibility).  Further, as support for his determination that Plaintiff had "exaggerated her allegations of pain and other symptoms to the extent that she contends that she is unable to perform a somewhat limited range of light work activity, [as] subject to the additional [limitations]," the ALJ also cited inconsistencies between Plaintiff's contentions and her self-described activities of daily living.  R. 36, 33-37.  After a detailed review of Plaintiff's reports of her activities, the ALJ found that Plaintiff's activities of daily living "do not appear to be significantly inconsistent with the capacity to perform a somewhat limited range of light work activity subject to the additional nonexertional limitations, including mental limitations determined by this [ALJ]."  R. 36, 37.

In this case, the ALJ properly evaluated Plaintiff's credibility using the relevant factors and "stated [the] specific evidence he relied on in determining that [the claimant's] allegations of disabling pain were not credible."  *See Qualls*, 206 F.3d at 1372.  It is not the Court's role to weigh the evidence differently on substantial evidence review.  *See Hackett*, 395 F.3d at 1173.

### 3.  Development of the Record

Plaintiff next alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to fully and fairly develop the record by seeking additional information from Dr. Foote and Stephen Andrade, MD, a physician

who "treated [Plaintiff] for back and neck pain." Pl.'s Br. at 21-25. The Court disagrees. An ALJ's duty to recontact Plaintiff's physicians or otherwise seek additional medical evidence is triggered if the medical evidence is insufficient to determine disability. 20 C.F.R. § 404.1520b(c); *Giuliano v. Colvin*, 577 F. App'x 859, 862 (10th Cir. 2014) ("[T]he duty to recontact a doctor is triggered when the evidence is insufficient to make a proper disability determination.") (citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001)).[10] Here, the ALJ had sufficient evidence to make a disability determination.

With respect to Plaintiff's functional mental limitations, the ALJ had before him 22 progress notes from Dr. Foote, spanning from November 2010 to January 2013, each of which contained detailed mental status examination findings. *See* R. 24-27, 30; *see also* Exs. 7F, 15F. The ALJ also considered multiple treatment notes from Dr. Brand, as well as a consultative examination from Dr. Waller and two opinions from state medical consultants. *See* R. 24-27, 30-31; *see also* Exs. 5F, 7F; R. 423-36 (Ex. 9F); R. 453 (Ex. 12F). Plaintiff has not shown that the medical records from Dr. Foote or the medical record as a whole was insufficient for determining disability. As such, the ALJ was not required to request more information from Dr. Foote. *See* 20 C.F.R. § 404.1520b; *see, e.g., Beasley v. Colvin*, 520 F. App'x 748, 752 (10th Cir. 2013) (holding that when the treating physician had issued several items of evidence, the "ALJ had no duty to

---

[10] Effective March 26, 2012, the regulations governing an ALJ's "duty" to recontact a medical source changed. 77 Fed. Reg. 10651-01 (Feb. 21, 2000). Under the current regulations, *if* the evidence is insufficient to determine disability, an ALJ "*may* recontact [a] treating physician, psychologist, or other medical source." *See* 20 C.F.R. § 404.1520b(c) (emphasis added).

recontact [the treating source] . . . because the evidence was adequate to evaluate whether [the claimant] was disabled").

Nor has Plaintiff shown that "the record was under developed" based upon the notation in Dr. Waller's evaluation that additional testing "would be recommended to confirm the current diagnostic impressions," which were "based on [Plaintiff's] self-report." *See* Pl.'s Br. at 22; R. 349-50. A diagnosis is not determinative of a disability; instead, the focus of a disability determination is on the functional consequences of a condition. *See, e.g., Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015); *Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015). Here, regardless of a fully-confirmed diagnosis, Dr. Waller made findings regarding the functional limitations he observed from his examination and, in turn, the ALJ evaluated the "opinions and mental status findings reported by Dr. Waller" in determining the RFC. *See* R. 26-27, 30, 31. Plaintiff has not shown that failure to obtain additional testing to confirm Dr. Waller's diagnosis rendered the record insufficient for determining disability. Specifically, Plaintiff has not shown that Dr. Waller's statement impelled the ALJ to recontact Dr. Foote for confirmatory diagnosis or obtain additional information. *See* 20 C.F.R. § 404.1520b; *Jones v. Colvin*, 647 F. App'x 878, 882 (10th Cir. 2016) (ALJ did not err in failing to recontact medical source when claimant "fail[ed] to show that inconsistent or insufficient evidence prevented the ALJ from determining whether he was disabled").

With respect to Plaintiff's physical impairments, Plaintiff also has not shown that the record was inadequate such that the ALJ should have contacted Plaintiff's treating physicians for additional information. *See* Pl.'s Br. at 22-23; 20 C.F.R. § 404.1520b. As

Plaintiff acknowledges, the "record contains objective medical evidence and significant clinical findings," including "raw medical data from [Plaintiff's physicians]." Pl.'s Br. at 22-23; *see also* R. 229-60, 261-98, 338-45 (Exs. 1F, 2F, 4F). Additionally, the record contains reviews by two state medical consultants. *See* Pl.'s Br. at 24; *see also* R. 437-44, 445-52, 454-61, 462 (Exs. 10F, 11F, 13F, 14F). The evidence as a whole was adequate to evaluate Plaintiff's physical impairments and the ALJ was not required to recontact a treating physician or otherwise obtain additional information. *See, e.g., Beasley*, 520 F. App'x at 752 (10th Cir. 2013); *Cowan v. Astrue*, 522 F.3d 1182, 1187 (10th Cir. 2008) (holding that ALJ did not need to further develop the record where sufficient evidence existed to make a disability determination).

Moreover, Plaintiff has not shown that the ALJ "substitut[ed] his judgment" for that of Plaintiff's physicians. Pl.'s Br. at 21, 23. This is not a situation where the ALJ improperly rejected a medical opinion or medical judgment and elevated his own medical opinion over that of a physician. *Cf. Winfrey v. Chater*, 92 F.3d 1017, 1022-23 (10th Cir. 1996) (finding ALJ substituted his judgment for that of treating psychologist when ALJ rejected psychologist's diagnoses due to ALJ's opinion that psychologist had improperly used diagnostic tests); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987). Rather, the ALJ evaluated the medical evidence of record, properly assessed weight for the medical opinions, and determined the RFC. "The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted).

4. Whether the ALJ's RFC Determination Is Supported by Substantial Evidence

Relying on her contentions that greater weight should have been given to Dr. Brand's opinions and Plaintiff's testimony, and further contending that "the ALJ's decision does not identify a medical opinion that supports his [RFC] finding," Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. *See*, *e.g.*, Pl.'s Br. at 21. The Court disagrees.

The Court "must affirm an ALJ's decision if substantial evidence—'more than a scintilla, but less than a preponderance'—exists to support it." *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (quoting *Lax*, 489 F.3d at 1084). Here, the Court has found that the ALJ's views of Dr. Brand's opinions and Plaintiff's testimony are supported by substantial evidence. Regarding the lack of a substantially identical medical opinion, no such opinion is required. The Tenth Circuit recently reiterated its rejection of the proposition "that an ALJ may not make an RFC finding that differs from a physician's opinion unless the ALJ relies on a conflicting medical opinion." *Berumen v. Colvin*, 640 F. App'x 763, 765 (10th Cir. 2016). That court explained:

> In *Chapo*[, 682 F.3d at 1288], we rejected the argument "that the components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion." As we noted in *Chapo*, "[t]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Id.* Moreover, . . . it is ultimately the ALJ's responsibility, not a physician's, to assess a claimant's RFC from the medical record.

*Id.* at 765-66 (second alteration in original).

Here, two reviewing psychologists determined that Plaintiff had no severe mental impairments. R. 423-35, 453. The ALJ disagreed, finding that the medical record demonstrated the existence of severe mental impairments and placing restrictions in the RFC to account for limitations caused by those impairments. R. 30, 20. Consistently with the discussion above, Plaintiff has not shown that these determinations by the ALJ are unsupported by substantial evidence in the record.

## B. Step-Five Determination

Plaintiff also argues that the ALJ's step-five determination that Plaintiff could perform jobs that exist in substantial numbers in the regional or national economy is not supported by substantial evidence. Pl.'s Br. at 28-32. Plaintiff contends that the ALJ's reliance on the VE's testimony was improper because the ALJ did not include all of Plaintiff's limitations in the hypothetical posed to the VE. Pl.'s Br. at 29-31.

The ALJ, however, posed a hypothetical question that reflected all the limitations found credible and ultimately included in his RFC assessment. *Compare* R. 63, *with* R. 32-33.[11] The VE testified that such a hypothetical individual could perform the light

_____

[11] Plaintiff argues that the ALJ erred by not incorporating in the hypothetical the finding set forth in the written decision that Plaintiff has moderate difficulty in maintaining concentration, persistence, and pace. Pl.'s Br. at 30; *see* R. 31, 32. Such finding is a "paragraph B" finding that the ALJ made at steps two and three. *See* R. 31, 32; SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). As set forth by the SSA, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. The Tenth Circuit has also rejected Plaintiff's argument that the ALJ must incorporate "paragraph B" criteria findings of moderate limitations into the RFC finding. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-

unskilled jobs of merchandise marker, label coder, and routing clerk, and the sedentary unskilled jobs of addressor, tube operator, and document processor. R. 64. Because the hypothetical posed to the VE comprehensively described Plaintiff's limitations as reflected in the RFC determination (which is supported by substantial evidence as outlined above), the ALJ did not err in relying on the VE's testimony to find that Plaintiff could perform other work that existed in the national economy. *See Qualls*, 206 F.3d at 1373 ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

Plaintiff additionally argues that the VE's testimony conflicts with the DOT because the jobs identified by the VE and relied upon by the ALJ at step five require

---

related functional limitation for the purposes of the RFC assessment.").

Plaintiff also asserts that she "meets or equals listing 12.04," although she does not separately challenge the ALJ's step-three determination on appeal. Pl.'s Br. at 13 n.9. To meet or equal listing 12.04, Plaintiff must have marked restrictions in at least two "paragraph B" criteria. *See* 20 C.F.R. pt. 404, subpart P app. 1 § 12.04(B). The ALJ found no marked limitations in the "paragraph B" criteria. *See* R. 32. Though Plaintiff cites to Dr. Brand's MCA 2 as evidence of such limitations, MCAs are mental capacity assessments that are relevant to the determinations made at steps four and five, not steps two and three. *See* SSR 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings ... and summarized on the [PRT]."); *see generally Lull v. Colvin*, 535 F. App'x 683, 685-86 (10th Cir. 2013) (explaining the differences between "paragraph B" criteria used to determine mental impairments and mental capacity assessments used to determine RFC). In any event, substantial evidence— including as discussed above—supported the limited weight given to Dr. Brand's MCAs.

climbing, which the ALJ determined Plaintiff could not do. Pl.'s Br. at 31-32; *see also* R. 32-33. Plaintiff contends that, because the ALJ did not resolve the conflict, the VE's testimony does not constitute substantial evidence for the ALJ's step-five determination. Pl.'s Br. at 31-32. However, a conflict between the VE's testimony and the DOT would only be prejudicial if all of the occupations identified by the VE, and relied upon by the ALJ at step five as examples of jobs that Plaintiff can perform, would be precluded by Plaintiff's limitations. *See Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (holding that ALJ's failure to include all limitations from RFC in hypothetical question to VE was harmless when two of the four occupations identified by the VE were consistent with RFC). *See generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (indicating that harmless-error analysis may be appropriate where ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)).

The VE identified a total of six occupations that a hypothetical person subject to all of the limitations listed in Plaintiff's RFC would be able to perform. *See* R. 38. Examination of the *Dictionary of Occupational Titles* ("DOT") entries for these positions confirms that one occupation, label coder, has a "Climbing" requirement of "Occasionally." DOT 920.587-014 (label coder), 1991 WL 687915 (4th rev. ed. 1991). Because Plaintiff's RFC includes the restriction that she "never climb ladders, robes or scaffolds," Plaintiff is correct that this occupation is precluded by the RFC determination.

The remaining five occupations testified to by the VE and relied upon by the ALJ, however, do not conflict with a limitation on climbing. For the jobs of merchandise marker, routing clerk, addresser, tube operator, and document processer, the "Climbing" requirement is "Not Present"—i.e., the "[a]ctivity or condition does not exist." *See id.* 209.587-034 (merchandise marker), 1991 WL 671802; *id.* 222.587-038 (routing clerk), 1991 WL 672123; *id.* 209.587-010 (addresser), 1991 WL 671797; *id.* 239.687-014 (tube operator), 1991 WL 672235; *id.* 249.587-018 (document processor), 1991 WL 672349. The VE testified that these five occupations together offer 6100 jobs existing in Oklahoma and 573,500 jobs existing in the national economy. *See* R. 64. Because these occupations support the ALJ's step-five conclusion, reversal is not warranted even with erroneous reliance upon the occupation of label coder.[12] *See, e.g., Chrismon*, 531 F. App'x at 899-900; *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (recognizing that the Tenth Circuit has "held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy"); *King v. Colvin*, No. CIV-15-50-D, 2016 WL 1171491, at *4 (W.D. Okla. Mar. 8, 2016) (R. & R.) (finding no prejudicial error when, after disregarding one occupation cited by ALJ, the remaining occupations offered a total of 2400 combined jobs in Oklahoma and

---

[12] Plaintiff also contends that "work as a merchandise marker . . . requires occasional communication with the public." Pl.'s Br. at 32. A review of the DOT listing for merchandise marker, however, indicates that the requirement for interacting with people is coded as an 8, which is the lowest level possible, and specified as "Not Significant," while the activity of Talking is "Not Present." *See* DOT 209.587-034 (merchandise marker), 1991 WL 671802; *id.* PARTS OF THE OCCUPATIONAL DEFINITION, 1991 WL 645965. The Court finds no merit in Plaintiff's argument.

266,000 combined jobs in the national economy), *adopted*, 2016 WL 1179212 (W.D. Okla. Mar. 24, 2016); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (upholding ALJ's reliance on VE testimony where, even assuming two of the three jobs relied upon by the ALJ were erroneous, substantial evidence showed claimant could do the third job, which existed in significant numbers in the national economy).

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is AFFIRMED. Judgment will issue accordingly.

IT IS SO ORDERED this 22nd day of September, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

| DR. BRAND'S MENTAL CAPACITY ASSESSMENTS | | |
|---|---|---|
| | **DEGREE OF LIMITATION** | |
| | **MCA 1** | **MCA 2** |
| **UNDERSTANDING & MEMORY** | | |
| The ability to remember locations and work-like procedures | Moderate | Moderate |
| The ability to understand and remember very short and simple instructions | Moderate | Moderate |
| The ability to understand and remember detailed instructions | Marked | Moderate |
| **SUSTAINED CONCENTRATION & PERSISTENCE** | | |
| The ability to carry out very short and simple instructions | Slight | Moderate |
| The ability to carry out detailed instructions | Moderate | Marked |
| The ability to maintain attention and concentration for extended periods | Moderate | Marked |
| The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances | Moderate | Marked |
| The ability to sustain an ordinary routine without special supervision | Slight | Moderate |
| The ability to work in coordination with or proximity to others without being distracted by them | Marked | Moderate |
| The ability to make simple work-related decisions | Moderate | Slight |
| The ability to complete a normal workday without interruptions from psychologically based symptoms | Marked | Marked |
| The ability to complete a normal workweek without interruptions from psychologically based symptoms | Moderate | Marked |
| The ability to perform at a consistent pace with a standard number and length of rest periods | Moderate | Moderate |
| Number of monthly absences | 2 | 3 |
| **SOCIAL INTERACTION** | | |
| The ability to interact appropriately with the general public | Slight | Slight |
| The ability to ask simple questions or request assistance | Slight | Slight |
| The ability to accept instructions and respond appropriately to criticism from supervisors | Moderate | Marked |
| The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes | Moderate | Moderate |
| The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness | Marked | Slight |
| **ADAPTATION** | | |
| The ability to respond appropriately to changes in the work setting | Marked | Marked |
| The ability to be aware of normal hazards and take appropriate precautions | Moderate | Slight |

| | | |
|---|---|---|
| The ability to travel in unfamiliar places or use public transportation | Marked | Marked |
| The ability to set realistic goals or make plans independently of others | Moderate | Marked |